## BEGGS v. SIMON et al.

### No. 14388.

Court of Civil Appeals of Texas.
Fort Worth.

May 22, 1942.

Rehearing Denied June 26, 1942.

Levy & Evans, of Fort Worth, for appellant.

Slay & Simon, Richard U. Simon, and Sol Gordon, all of Fort Worth, for appellees.

SPEER, Justice.

George Beggs sued Slay, Simon & Smith to recover $11,041.61, alleged to have been paid out by plaintiff in premiums for life insurance on policies in favor of defendants Slay and Simon and for principal and interest paid on loans against the insurance contracts, during a period of time between 1932 and the date of trial in May, 1941.

The case was tried to the court without a jury. The judgment was adverse to plaintiff and he has perfected this appeal. The parties will be referred to as they were in the trial court, except when necessary to mention them by name.

A better understanding of the controversy may be had if we should give a brief summary of the situation from which the suit originated. Prior to 1931, defendants were indebted to plaintiff in the sum of approximately $29,000, including interest, evidenced by a series of twenty-one notes. In addition to the above indebtedness, plaintiff was surety for defendants on two notes for $5,000 and $1,950, respectively.

On about January 1, 1931, defendants executed and delivered to plaintiff a second lien deed of trust on real estate, to secure plaintiff in the payment of their twenty-one notes, with interest, as well also to indemnify him against loss and liability on account of the two notes upon which plaintiff was surety. In the face of the deed of trust executed by defendants, as grantors, to plaintiff, as grantee, this provision is found:

"Grantors herein covenant and agree to transfer to the beneficiary herein, simultaneously with the execution of this instrument, valid and subsisting policies of insurance covering their lives, in an aggregate amount of $29,000, with the beneficiary herein, George Beggs, named as beneficiary in said policies, and covenant and agree to keep said policies in full force until the above indebtedness, or any other indebtedness that may then be due by said grantors to said beneficiary, shall have been fully paid; and covenant and agree to pay the premiums on said policies, as they accrue; the amount of said policies, if collected, to be applied to the payment of

the indebtedness above described, and then to any other indebtedness that may then be owing to the beneficiary herein, hereby granting to the beneficiary herein the option to apply the proceeds, or any part thereof, derived from said policies, to the payment of the above indebtedness, in the manner as above provided with respect to payments made by grantors."

Pursuant thereto, on February 6, 1931, Simon and wife assigned to plaintiff a policy of insurance with Southland Life Insurance Co. for $25,000, on the life of the husband and in which the wife was beneficiary; the annual premium provided for in the policy was $766.25. On February 14, 1931, Slay and wife assigned to plaintiff a policy issued by Indianapolis Life Insurance Co., for $2,500, insuring the life of Slay in that sum, in which policy the wife was named as beneficiary; the annual premium on that policy was $115.10. Other policies were likewise assigned to plaintiff, but they lapsed and do not enter into this controversy.

Neither of the defendants ever at any time after the assignments were made paid any premiums or interest, on existing loans against the policies. Beginning in 1932, plaintiff paid all premiums and accrued interest on the loans and continued to make such payments up to and including 1941, just prior to the date of trial on amended pleadings.

In 1931, plaintiff paid the two notes of $5,000 and $1,950, upon which he was surety for the defendants.

Defendants pleaded the two and four years' statute of limitation as against parts of plaintiff's claim. They likewise pleaded, and it was stipulated as true, that defendants, as individuals and as partners, filed their voluntary petitions in bankruptcy on April 10, 1934, and listed in their schedules the insurance policies involved in this suit, claiming statutory exemptions thereunder; these exemptions were allowed by the court of bankruptcy. Discharges from all provable debts were duly and timely entered in the judgment of the federal court.

Both sides concede that the sole issue for determination on this appeal is: Did the discharge of defendants in bankruptcy operate to bar plaintiff's right of recovery for the amounts paid out by him for premiums and interest on loans against the two policies on the lives of defendants

Slay and Simon? Put another way, as suggested by defendants: Was the indebtedness of defendants Slay and Simon to plaintiff Beggs, which was founded upon the express written agreement of those defendants to keep the policies in force and to pay the premiums, discharged in bankruptcy?

In approaching the answer to the inquiry, we think it proper to quote those parts of the Federal Bankruptcy Act applicable. They are:

"Section 17. A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * *." U.S.C.A., Title 11, § 35.

"Section 1 * * * (11) 'debt' shall include any debt, demand, or claim provable in bankruptcy." U.S.C.A., Title 11, § 1(11).

"Section 63. Debts provable against. (a) Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; * * * (4) founded upon an open account, or upon a contract express or implied; * * * (b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." U.S.C.A. Title 11, § 103, subs. a(1, 4), b.

Plaintiff concedes that the discharge barred his recovery for the principal debts, consisting of the series of notes, aggregating $29,000, including accrued interest, and the notes for $5,000 and $1,950, respectively, which plaintiff had paid because of his suretyship; he also admits that all premiums and interest payments made by him prior to April 19, 1936, are barred by the four years' statute of limitation. His contention here is that he is entitled to recover against defendants the amounts paid out by him during the four years next preceding the institution of this suit, for premiums and interest on loans, which payments, he asserts, were made by him not voluntarily, but to protect his interest in the insurance policies, at times when defendants had obligated themselves to pay, under the

terms of the contract contained in the deed of trust above referred to, and which promises they had failed to keep.

It is the contention of plaintiff (appellant) that under the terms of the above quoted provision in the deed of trust, he did not have a provable claim against the estate of the bankrupts when the petition was filed and acted upon by the bankruptcy court. Defendants are equally insistent that plaintiff's claim here asserted was provable at the time of bankruptcy and was therefore barred by the discharge.

Neither side has cited us to any decision where the precise question has been decided, and we are unable to find such. The trial court filed elaborate findings of fact and conclusions of law. The facts so found are abundantly supported by the testimony and stipulations of the parties. The only contract or agreement by which the policies of insurance were assigned to plaintiff is that quoted above. Among other things, the court found the existence of plaintiff's original debt as of January 1, 1931, and plaintiff's liability as surety on the two notes above referred to; the execution of the second lien deed of trust containing the above quoted agreement to assign policies of insurance aggregating $29,000, and for defendants to keep the insurance in force; the sale of the real estate by the first lien holder with no benefit to plaintiff; that the policy of $25,000 on the life of Mr. Simon had a loan against it of $3,187 and the $2,500 policy on the life of Mr. Slay had a loan against it for $103. That no premiums or interest on loans were paid by defendants after the assignments early in 1931. That plaintiff paid the premiums and accrued interest on loans for the years 1932 to 1934, both inclusive. The petition in bankruptcy was filed in 1934; at that time the Simon policy for $25,000 had a cash or loan value of $5,050, subject to the $3,187 loan against it, and the policy at that time had paid up life insurance value of $8,875. The Slay policy of $2,500 had a cash or loan value of $295, subject to the loan of $103 against it, and paid up insurance of $510.

There is undisputed testimony in the record by an expert insurance man to the effect that under the terms and provisions of the two insurance policies involved, the amount of premiums to be paid to mature both policies could be calculated at any given time; that in 1934 at the time of bankrupt-

cy a lump sum could have been paid and thereby mature each of the policies; these calculations are made by experts, based upon life expectancies of the insured, and can be arrived at with mathematical precision, and that the companies would accept payment of that amount in lieu of deferred payments of premiums so that the policy would remain in force and effect during the life of the insured. It was found by the court that the only contract between the parties by which defendants were to keep the policies in force, was that provision in the deed of trust instrument. As shown by the testimony, the amount necessary to mature the insurance contracts was not speculative nor uncertain. It may be said that such calculations as those by actuaries based on long business experience and mortality tables are not absolutely definite, yet courts have long recognized them as being sufficient as a basis for the satisfaction of contractual promises.

 The beneficent purpose of the National Bankruptcy Act is to relieve the unfortunate honest trader from the enforced payment of his debts when he shall have delivered his all to the trustee in bankruptcy for distribution among his creditors, thus permitting him to start afresh, unhampered by the fear of execution against his new earnings. In discussing what are provable claims in bankruptcy, i.e., such as are barred by the discharge, and those obligations included in subsection a (4) of section 63 of the Act, in Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 391, 75 L.Ed. 1028, this was said: "Although the omission of any reference to contingent claims in section 63 of the present act has led to some confusion and uncertainty in the decisions, it is now settled that claims founded upon contract, which at the time of the bankruptcy are fixed in amount or susceptible of liquidation, may be proved under subdivision (a), ·(4) of that section * * * although not absolutely owing when the petition is filed." Several prior decisions by that court are cited in support of the rule announced. The case from which the above quotation is taken was discussing claims of indorsers and the uncertainty accompanying their liability, and it was held that the obligation of an indorser was a claim, a debt provable in bankruptcy. In the instant case, the expert witness who testified concerning the two involved policies, considered the contingencies and pro-

visions therein set out, and showed without contradiction that the amount necessary to make good the promises of defendants to keep the insurance in force until their respective deaths was susceptible of calculation with certainty at the time the petitions in bankruptcy were filed and acted upon by the federal court. Plaintiff held the written contract executed by defendants, in which they had promised three years before the date of bankruptcy to keep the insurance policies in effect; they had not done so. Defendants never at any subsequent time made any promises which would change the status of the original contract. There is nothing in the record to indicate that plaintiff had any reason to believe defendants would do otherwise than they had done in the past, with reference to paying premiums. The contract relied upon by plaintiff was breached long prior to the filing of the petitions in bankruptcy; its breach created a claim in favor of plaintiff and hence a "debt", so far as defined by section 1(11). It therefore appears to us that the language of section 63, above quoted, which permits proof of a claim, "founded * * * upon a contract express or implied", is broad enough to embrace plaintiff's claim sued on in this case. Maynard v. Elliott, supra.

What we have said we think is more applicable to cases involving life insurance policies than some other contracts which have been breached. Where the amount necessary to mature the value of an insurance policy can be calculated by actuaries on the recognized rule of life expectancy, the liability for the breach to pay premiums may be accurately ascertained at any given time. In case of a breach of contracts of a nature different from those embraced in life insurance policies, it may often happen that the resultant damage could not be accurately ascertained.

In Re Miller, D.C., 225 F. 331, 332, defendant had obligated himself to pay plaintiff $3 per day so long as he lived. Payments were made up to the date of filing petition in bankruptcy by defendant. No payments were made after bankruptcy and it was held that plaintiff had a provable claim for debt at the time of bankruptcy upon the theory that by the use of mortality tables and life expectancy, the remaining amount unpaid on the contract could be established. The court reasoned: "Nobody knows what that length of time would have been [how long plaintiff would live thereafter]. But the damages are not on that account treated as unassessable, nor the value as unascertainable. The expected duration of the life in question, arrived at by the use of mortality tables in connection with such facts as the particular case develops, is used as the basis for computing damages or value."

Somewhat analogous to the situation before us are cases where persons have assigned their future wages to secure their debts, and subsequently filed voluntary petitions in bankruptcy. In an able discussion of the primary purposes of the Bankruptcy Act, such contracts are declared to be barred by a discharge in bankruptcy. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. There is no difference in the ultimate effect upon an unfortunate person to be required to continue delivery to another of all his earnings after being discharged in bankruptcy and one who is sought to be held, as are the defendants in this case, to continue as long as they live paying premiums on life insurance policies to secure pre-existing debts falling under the jurisdiction of the bankruptcy courts. The amount required by the one class and that promised by the other may differ, but the principle is the same.

For the reasons stated, we hold that the claim sued upon by plaintiff in this case was discharged by the bankruptcy court, and the trial court did not err in so holding. The judgment is therefore affirmed.

BROWN, J., not sitting.